FOLKS HESS, PLLC
1850 N Central Avenue, Suite 1140
Phoenix, Arizona 85004
Telephone: (602) 256-5906
email: folks@folkshess.com
Larry O. Folks, #012142
Attorneys for Movant
100501

UNITED STATES BANKRUPTCY COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Proceedings in Chapter 13 |
| **JOHN A ZARRO**, | No. 2:24-bk-04890-EPB |
| Debtor(s). | **OBJECTION TO DEBTOR'S CHAPTER 13 PLAN** |

AMERICREDIT FINANCIAL SERVICES, INC. dba GM FINANCIAL of ARIZONA, a secured creditor in the above captioned matter (hereinafter "GM FINANCIAL"), by and through its attorneys, Folks Hess, PLLC, herewith submits its objection to the Chapter 13 Plan, filed on June 19, 2024, (the "Plan"), on the grounds that it fails to meet the statutory requirements set out in § 1325 of the United States Bankruptcy Code.

GM FINANCIAL is the owner and holder of a purchase money security agreement covering collateral described as:

2013 CHEVROLET EQUINOX, VIN 2GNALDEK6D6132861 (hereinafter the "Property").

The Plan lists this creditor as "GM Financial", however, the correct identity of the creditor is AMERICREDIT FINANCIAL SERVICES, INC. dba GM FINANCIAL of ARIZONA. The balance due and owing to GM FINANCIAL as of the date of the bankruptcy filing was $12,554.28, plus accrued, and accruing interest at the rate of 13.50% per annum. The Contract requires monthly payments of $397.71. The Contract date is August 22, 2015. GM

Page 1

FINANCIAL's Proof of Claim 3-1 with true, correct, and redacted copies of the Motor Vehicle Retail Installment Sales Contract and Purchase Money Security Agreement and Arizona Certificate of Title document evidencing GM FINANCIAL's first, valid, prior, and perfected security interest and lien upon the collateral is attached hereto as **Exhibit "A"** and incorporated herein by reference.

**<u>GM FINANCIAL is entitled to at least 1% Adequate Protection Payments on the Secured Claim</u>**.

GM FINANCIAL is entitled to adequate protection of its secured claim as of the date the petition was filed. The Plan offers $60.00 per month for adequate protection. Local Rule 2084-6 provides that GM FINANCIAL must be paid pre-confirmation adequate protection in the amount no less than 1% of the value of the collateral, beginning from the first plan payment received by the Trustee and continuing until GM FINANCIAL begins to receive its usual plan payments on its secured claim. The Plan offers $60.00 per month for adequate protection. GM FINANCIAL will accept Debtor's proposed adequate protection of $60.00 per month.

**<u>The Vehicle is undervalued and the amount of the Secured Claim must be increased</u>.**

Pursuant to 11 U.S.C. §1325(a)(5)(B)(ii) with respect to allowed secured claims, if the claimant does not accept the plan, then the plan must provide that the value to "be distributed under the plan on account of such claim is not less than the allowed amount of such claim; . . ." For personal property securing an allowed claim, when the loan is not protected by the 910-day rule, the allowed amount or value of the property to be distributed under the plan shall be the "replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing." 11 U.S.C. §506(a)(2). This is the cost to the Debtor to replace the collateral, or the replacement/retail value.

The Debtor has incorrectly valued the Property. The Debtor's Plan provides to pay GM FINANCIAL a secured claim of $3,500.00. The true retail/replacement value of the 2013

CHEVROLET EQUINOX as of the time of the bankruptcy filing was no less than $5,660.00. See **Exhibit "B"** attached hereto and incorporated herein which is a true and correct copy of the J.D. Power retail value as of June 25, 2024. The Plan must be amended to provide for GM FINANCIAL's secured claim in the amount $5,660.00.

### GM FINANCIAL is entitled to a Reasonable Rate of Return on the Secured Claim.

The Debtor's Plan provides for interest of 10.50% on GM FINANCIAL's claim. Section 1325(a)(5)(B)(ii) of the United States Bankruptcy Code provides that interest payments must be made to secured creditors when secured claims are paid under a Chapter 13 plan and stretched out and paid over time. Without interest the secured creditor will not be paid the present value of the claim, but rather an amount less than the claim amount. *Till v. SCS Credit Corp., 541 U.S. 465 (2004)*. The prime rate of interest plus a risk adjustment is typically used by the Courts. GM FINANCIAL will accept the rate of 10.50% as a reasonable rate of return, which is 2.0 points over the prime rate of interest as of the date of the bankruptcy filing.

### GM FINANCIAL requests Current Proof of Insurance.

GM FINANCIAL does not have current proof of insurance. The Debtor must insure this vehicle in an amount no less than the full balance owed to GM FINANCIAL. Additionally, the insurance must list GM FINANCIAL as the loss payee.

WHEREFORE, AMERICREDIT FINANCIAL SERVICES, INC. dba GM FINANCIAL of ARIZONA, respectfully requests that the Chapter 13 plan as proposed be denied confirmation.

RESPECTFULLY SUBMITTED this 19th day of July 2024.

FOLKS HESS, PLLC
*/s/ Larry O Folks, SBN 012142*
Larry O. Folks
Attorneys for Movant

| | |
|---|---|
| 1 | ORIGINAL by ECF and |
| 2 | COPY of the foregoing mailed<br>the 22nd day of July 2024, to: |
| 3 | **JOHN A ZARRO** |
| 4 | 1824 E ALOE PL<br>CHANDLER, AZ 85286 |
| 5 | *Debtor(s)* |
| 6 | **THOMAS ADAMS MCAVITY** |
| 7 | PHOENIX FRESH START BANKRUPTCY ATTORNEYS<br>4131 MAIN STREET |
| 8 | SKOKIE, IL 60076-2780<br>Email: documents@phxfreshstart.com |
| 9 | *Attorney for Debtor(s)* |
| 10 | **RUSSELL BROWN** |
| 11 | CHAPTER 13 TRUSTEE<br>3838 N CENTRAL AVE STE 800 |
| 12 | PHOENIX, AZ 85012-1965<br>*Chapter 13 Trustee* |
| 13 | **U.S. TRUSTEE** |
| 14 | OFFICE OF THE U.S. TRUSTEE<br>230 NORTH FIRST AVENUE, SUITE 204 |
| 15 | PHOENIX, AZ 85003<br>*US Trustee* |
| 16 | |
| 17 | By:  */s/ Francescia Davidson*<br>An employee of Folks Hess, PLLC |

# EXHIBIT "A"

# EXHIBIT "A"

| **Fill in this information to identify your case:** | | | |
|---|---|---|---|
| Debtor 1 | JOHN A ZARRO | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | District Of Arizona | | |
| Case number | 24-04890-EPB | | |

Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1: Identify the Claim

1. **Who is the current creditor?**
   AmeriCredit Financial Services, Inc. dba GM Financial
   Name of the current creditor (the person or entity to be paid for this claim)
   Other names the creditor used with the debtor

2. **Has this claim been acquired from someone else?**
   [X] No
   [ ] Yes. From Whom?

3. **Where should notices and payments to the creditor be sent?**
   Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

   **Where should notices to the creditor be sent?**

   AmeriCredit Financial Services, Inc. dba GM Financial
   AmeriCredit Financial Services, Inc. dba GM Financial
   PO Box 183853
   Arlington, TX  76096

   Contact phone  (877) 203-5538
   Contact email

   **Where should payments to the creditor be sent?** (If different)

   AmeriCredit Financial Services, Inc. dba GM Financial
   AmeriCredit Financial Services, Inc. dba GM Financial
   PO Box 183853
   Arlington, TX  76096

   Contact phone  (877) 203-5538
   Contact email

   Uniform claim identifier for electronic payments in chapter 13 (if you use one)
   __ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __

4. **Does this claim amend one already filed?**
   [X] No
   [ ] Yes. Claim number on court claims registry (if known) _____   Filed on _____
   MM / DD / YYYY

5. **Do you know if anyone else has filed a proof of claim for this claim?**
   [X] No
   [ ] Yes. Who made the earlier filing? _____

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

| 6. | **Do you have any number you use to identify the debtor?** | [ ] No <br> [X] Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 3983 |
|---|---|---|

| 7. | **How much is the claim?** <br><br> **CLAIMANT RESERVES THE RIGHT TO AMEND CLAIM** | $12,554.28 | **Does this amount include interest or other charges?** <br> [X] No <br> [ ] Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
|---|---|---|---|

| 8. | **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. <br><br> Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). <br><br> Limit disclosing information that is entitled to privacy, such as health care information. <br><br> Money Loaned |
|---|---|---|

| 9. | **Is all or part of the claim secured?** | [ ] No <br> [X] Yes. The claim is secured by a lien on property. <br><br> **Nature of property:** <br> [ ] Real estate. If the claim is secured by the debtor's principal residence, file a Mortgage Proof of Claim Attachment (Official Form 410-A) with this Proof of Claim <br> [X] Motor vehicle  **2013 CHEVROLET EQUINOX** <br> [ ] Other. Describe: <br><br> **Basis for perfection:** certificate of title <br> Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.) <br><br> **Value of Property:** $12,554.28 <br> **Amount of the claim that is secured:** $12,554.28 <br> **Amount of the claim that is unsecured:** $0.00  (the sum of the secured and unsecured amounts should match the amount in line 7.) <br><br> **Amount necessary to cure any default as of the date of the petition:** $12,554.28 <br><br> **Annual Interest Rate** (When the case was filed)  13.50% <br> [X] Fixed <br> [ ] Variable |
|---|---|---|

| 10. | **Is this claim based on a lease?** | [X] No <br> [ ] Yes. **Amount necessary to cure any default as of the date of the petition:** |
|---|---|---|

| 11. | **Is this claim subject to a right of setoff?** | [X] No <br> [ ] Yes. Identify the property: |
|---|---|---|

Official Form 410        **Proof of Claim**        page 2

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | [X] No |  |
|---|---|---|
|  | [ ] Yes. *Check one:* |  |
|  | [ ] Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ |
|  | [ ] Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
|  | [ ] Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ |
|  | [ ] Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ |
|  | [ ] Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ |
|  | [ ] Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $ |
|  | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. |  |

### Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

[X] I am the creditor.

[ ] I am the creditor's attorney or authorized agent.

[ ] I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

[ ] I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an autorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  June 25, 2024
                  MM / DD / YYYY

/s/ Mandy Youngblood
Signature

**Print the name of the person who is completing and signing this claim:**

Name: Mandy Youngblood
First name   Middle name   Last name

Title:

Company: AmeriCredit Financial Services, Inc. dba GM Financial

Address:

Contact phone:                    Email:

# Itemized Statement Required by Bankruptcy Rule 3001(c)(2)(A) as of Petition Date
## AmeriCredit Financial Services, Inc. dba GM Financial

| | |
|---|---|
| Name of Debtor: | **JOHN A ZARRO** |
| Case Number: | **24-04890-EPB** |
| Account Number: | **3983** |
| Principal | **12,554.28** |
| + Interest | **0.00** |
| + Late Fees | **0.00** |
| + Related Expense | **0.00** |
| - Sale Proceeds | **0.00** |
| - Refunds | **0.00** |
| - Payments | **0.00** |
| Other Adjustment | **0.00** |
| Total | **12,554.28** |

1095517

# MOTOR VEHICLE RETAIL INSTALLMENT SALES CONTRACT AND PURCHASE MONEY SECURITY AGREEMENT

STOCK NO. [redacted]

**Buyer(s)/Debtor(s):** JOHN AUGUST ZARRO
**Address:** 1824 E ALOE PL CHANDLER, AZ 85286-0000

**Seller/Creditor:** CHAPMAN CHEVROLET
**Address:** 1717 E BASELINE RD TEMPE, AZ 85283

This is an agreement for the installment purchase by you of the Vehicle described below. As used in this Contract, the words "you" and "your" mean the Buyer or Buyers who sign below. The words "we", "us", "our" and "Seller" refer to the Seller whose name and address appear above or to anyone to whom this Contract is assigned (referred to as the "Assignee"). If the Assignee notifies you that it has purchased this Contract, you agree to make all of your payments to the Assignee. This Contract may be cancelled by Seller if it is unable to assign the Contract to any one of the financial institutions with whom Seller regularly does business on terms acceptable to Seller. BY SIGNING BELOW, YOU ALSO AGREE TO ALL OF THE TERMS ON BOTH SIDES OF THIS CONTRACT. PLEASE READ THE BACK CAREFULLY.

The Vehicle which you are purchasing is:

| NEW OR USED | YEAR MODEL | MAKE TRADE NAME | NO. CYL. | BODY TYPE | MODEL # OR SERIES | VEHICLE I.D.# |
|---|---|---|---|---|---|---|
| USED | 2013 | CHEVROLET | 4 | FWD 4DR LT W/EQUINOX 1LT | | 2GNALDEK6D6132861 |

You intend to use the Vehicle primarily for: ☒ personal, family, or household purposes ("personal use") ☐ commercial, business, agricultural, or other non-personal use ("commercial use").

| ANNUAL PERCENTAGE RATE — THE COST OF YOUR CREDIT AS A YEARLY RATE | FINANCE CHARGE — THE DOLLAR AMOUNT THE CREDIT WILL COST YOU | Amount Financed — The amount of credit provided to you or on your behalf | Total of Payments — The amount you will have paid after you have made all payments as scheduled | Total Sale Price — The total cost of your purchase on credit including your down payment of $ 4,000.00 |
|---|---|---|---|---|
| 13.500 % | $ 9,190.32 e | $ 19,444.80 | $ 28,635.12 e | $ 32,635.12 |

**Your payment schedule will be:**
Number of Payments: 72
Amount of Payments: 397.71
When Payments are Due: Monthly, Beginning 10/06/15

**Insurance:** CREDIT LIFE INSURANCE AND CREDIT DISABILITY INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT, AND WILL NOT BE PROVIDED UNLESS YOU SIGN AND AGREE TO PAY THE ADDITIONAL COST.

| Type | Term | Premium | Signature |
|---|---|---|---|
| Credit Life Insurance | _____ mos. | $ N/A | I want credit life insurance only _____ |
| Disability Insurance | _____ mos. | $ N/A | I want disability insurance only _____ |
| Credit Life and Disability | _____ mos. | $ N/A | I want credit life and disability insurance _____ |
| Joint Credit Life Insurance | _____ mos. | $ N/A | We want joint credit life insurance _____ |
| Joint Credit Life and Single Disability Insurance | _____ mos. | $ N/A | We want joint credit life and single disability insurance _____ |

**Security:** You are giving a security interest in the Vehicle being purchased.
**Late Charge:** If the Vehicle is purchased for personal use, and a payment is not paid in full within 10 days after it is due, you will pay a late charge not to exceed 5% of the unpaid balance of the installment.
**Prepayment:** If you pay off early, you will not have to pay a penalty.
See the other portions of this Contract for additional information about non-payment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

e means an estimate

## ITEMIZATION OF AMOUNT FINANCED

1. Cash Price (incl. accessories) $ 19,499.00 + Sales Tax $ 1,560.95 + Net Trade-In Deficiency (item 5 if negative) $ N/A to _____ = Total Cash Price ........ $ 21,059.95 (1)
2. Other charges included in this sale:
   * (a) Vehicle Service Contract (Term) 48 / 32000 to GMPP ........... $ 1,577.00
   * (b) Dealer Documentary Fee .......................................... $ 389.00
   * (c) Other (describe) _____ to _____ $ N/A
   * (d) Other (describe) _____ to _____ $ N/A
   * (e) Other (describe) _____ to _____ $ N/A
   * (f) Other (describe) _____ to _____ $ N/A
   Total ........................................................................ $ 1,966.00 (2)
3. Payments made on your behalf to Public Officials for Official Fees ........... $ 418.85 (3)
4. Cash Sale Price (sum of items 1, 2 and 3) ........................... $ 23,444.80 (4)
5. Trade-in: Yr. Make & Model _____ $ N/A − $ N/A = $ 0.00 (5)
   Gross Allowance   Payoff   Net Trade-In (Deficiency)
6. Total Down Payment includes:
   (a) Net Trade-In (item 5) (if negative, insert $0) ........... $ 0.00
   (b) Cash Down Payment (Includes manufacturer's rebate of $ N/A assigned to Seller) $ 4,000.00
   Total Down Payment (a + b) ........................... $ 4,000.00 (6)
7. Unpaid balance of Cash Sale Price (item 4 less item 6) ........... $ 19,444.80 (7)
8. Payments made to others on your behalf:
   * (a) Amounts paid to Insurance Companies for Insurance Premiums:
     (1) Credit Insurance Premiums $ N/A + (2) Property Insurance Premiums $ N/A
     Total ........................................................ $ N/A (8a)
   (b) Amounts paid to others:
     * (1) To: _____ for: _____ $ N/A (8b)
     * (2) To: _____ for: _____ $ N/A (8c)
     * (3) To: _____ for: _____ $ N/A (8d)
   Total Amount Paid to Others (Sum of items 8(a) through 8(d)) ........... $ N/A (8)
   **Seller may be retaining a portion of this amount.
9. Amount Financed - Amount of credit you will get (item 7 plus item 8) ........... $ 19,444.80 (9)
10. If the "Amount Financed" exceeds $ 54,600.00 or if the Vehicle is purchased primarily for commercial use, the "Amount Financed" is also the "Final Cash Price Balance" and the "Total of Payments" is also the "Time Balance."
11. **Property Insurance:** You promise to keep the Vehicle insured for its full value against loss or damage with loss payable endorsement in our favor during the time any amount is unpaid under this Contract. YOU MAY OBTAIN YOUR REQUIRED INSURANCE FROM ANY COMPANY ACCEPTABLE TO US. If you purchase your insurance through Seller, the costs and items of coverage are as follows:

| Coverage | Deductible | TERM | PREMIUM |
|---|---|---|---|
| Collision (actual cash value of loss less $ 500 deductible) and Comprehensive | | _____ months | $ N/A |
| including fire and theft (cash value of loss less $ 500 deductible) | | | |
| Other (describe) | | _____ months | $ N/A |

If you buy insurance through your own agent, the cost is not included in this Contract. Please give us the name and telephone number of the agent you chose:
Agent's Name: DIRECT
Agent's Address: SAN DIEGO, CA 062572370
Telephone Number: (800) 841-3000

**Promise to Pay:** By signing below, you promise to pay us the Amount Financed, together with finance charges calculated thereon at the Annual Percentage Rate. You agree to make your payments to us as set forth in the Payment Schedule shown above. Your final payment may change, depending upon your payment habits. We will apply each payment first to accrued finance charges and late charges and then to reduce your unpaid balance. This means your finance charge will be less when you pay early and more if you pay late. Any necessary adjustments in your total finance charge will be reflected in your final payment. If a payment is not paid in full within 10 days after it is due, you will also pay a late charge. If the Vehicle is purchased for commercial use, the late charge will be 5% of the unpaid balance of the installment; if the Vehicle is purchased for personal use, the late charge will not exceed 5% of the unpaid balance of the installment.

**Security Interest:** To protect us if you do not pay as promised, or if you break some other promise of this Contract, you give us a purchase money security interest in the Vehicle, all accessories thereto, and in any proceeds of the Vehicle. If the Vehicle is purchased for commercial use, this security interest also covers all equipment, accessories, and parts (other than accessions) added to the Vehicle. If the Vehicle is purchased for personal use, this security interest also covers equipment, accessories, and parts (other than accessions) added to the Vehicle within 10 days of the date of this Contract. You also give us a security interest in the proceeds of any physical damage insurance policy on the Vehicle; all insurance, maintenance, service, or other contracts we finance for you; and all proceeds from insurance, maintenance, service, or other contracts we finance for you, including any refunds of premiums or charges from the contracts. This security interest does not cover any other debts you owe us, and this debt is not covered by any other security interest held by us. **NOTICE: BY GIVING US A SECURITY INTEREST IN THE VEHICLE DESCRIBED ABOVE, YOU WAIVE ALL RIGHTS PROVIDED BY LAW TO CLAIM THE VEHICLE EXEMPT FROM LEGAL PROCESS.**

**LIMITATIONS/EXCLUSIONS OF PRODUCT WARRANTIES**
(a) For "new" vehicles: (1) If the Vehicle is purchased for personal use, Seller makes no implied warranty of merchantability or of fitness for any particular purpose unless Seller also gives you a written warranty, on its own behalf, with respect to the Vehicle, or, at the time of the sale or within 90 days thereafter, Seller enters into a service contract, on its own behalf, with you which applies to the Vehicle. In that event, any implied warranties arising from the sale of the Vehicle shall be limited to the duration of a Seller's written warranty or service contract; (2) If the Vehicle is purchased for commercial use, Seller makes no implied warranty of merchantability or of fitness for any particular purpose. The Vehicle is sold to you AS IS, except for any express warranties made by Seller, on its own behalf, or by the manufacturer of the Vehicle or of any component parts; (3) In all cases, Seller shall not be liable for any consequential damages arising from any breach of any warranty, express or implied.
(b) For "used" vehicles:
(1) Used Car Implied Warranty of Merchantability:

The Seller hereby warrants that the vehicle will be fit for the ordinary purposes for which the vehicle is used for 15 days or 500 miles after delivery, whichever is earlier, except with regard to particular defects disclosed on the first page of this agreement. You (the Purchaser) will have to pay up to $25.00 for each of the first two repairs if the warranty is violated.

(2) Waiver of Used Car Implied Warranty of Merchantability: Due to circumstances unusual to Seller's business, the used motor vehicle which is the subject of this Contract has the particular defects, if any, described below.
**ATTENTION PURCHASER:** Sign here only if the dealer told you that this vehicle has the following problem(s) and that you agree to buy the vehicle on those terms:
**ATENCION COMPRADOR:** Firme aqui solamente si el vendedor le dijo que el vehículo tiene el siguiente problema(s) y que usted conviene de compra el vehículo bajo estos términos.
1. _____
2. _____
3. _____
Buyer/Comprador _____ Date 08/22/15
Buyer/Comprador _____ Date 08/22/15

(3) The vehicle is sold "AS IS -- NOT EXPRESSLY WARRANTED OR GUARANTEED" unless Seller gives you a separate written instrument showing the terms of any warranty or service contract given by Seller on its own behalf. If the Vehicle is purchased for personal use, Seller makes no implied warranty of fitness for any particular purpose, and the implied warranty of merchantability is limited to 15 days or 500 miles after delivery, whichever is earlier, as set forth above, unless Seller also gives you a written warranty, on its own behalf, with respect to the Vehicle, or, at the time of the sale or within 90 days thereafter, Seller enters into a service contract, on its own behalf, with you which applies to the Vehicle. In that event, any implied warranties arising from the sale of the Vehicle shall be limited to the duration of Seller's written warranty or service contract. If the Vehicle is purchased for commercial use, Seller makes no implied warranty of fitness for any particular purpose, and the implied warranty of merchantability is limited to 15 days or 500 miles after delivery, whichever is earlier. In all cases, Seller shall not be liable for any consequential damages arising from any breach of any warranty, express or implied, except for a breach of the implied warranty of merchantability.

**NOTICE TO BUYER:** 1. Do not sign this Contract before you read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the Contract you sign.
Annual Percentage Rate (APR) for the installment sale of an automobile may be negotiated with the dealership: and the dealership may receive some portion of the finance charge or receive other compensation for providing the financing.
**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT, UNLESS DESCRIBED IN ITEM 11 AND AN APPROPRIATE PREMIUM CHARGE IS SHOWN IN ITEM 8(A) ABOVE.**

SELLER IS REGULATED AND COMPLAINTS CONCERNING THIS CONTRACT MAY BE ADDRESSED TO:
ARIZONA DEPARTMENT OF FINANCIAL INSTITUTIONS
2910 N. 44TH STREET, SUITE 310
PHOENIX, ARIZONA 85018
TELEPHONE: (602) 771-2800

Buyer(s) Acknowledge(s) receipt of a fully completed copy of this Contract
*BUYER ☒ _____
*BUYER _____

Dated this 22 day of 8 , 20 15 By _____ Its _____
*OTHER OWNERS: If a person shown on the certificate of title as an owner of the vehicle does not separately agree to pay this debt, please sign below to give us a security interest in the Vehicle, its proceeds, and physical damage insurance policy and any refunds of insurance premiums.

SIGNATURE _____ DATE 08/22/15
SIGNATURE _____ DATE 08/22/15

THE TRANSACTION WHICH IS THE SUBJECT OF THIS CONTRACT ☐ IS OR ☐ IS NOT SUBJECT TO A FEE RECEIVED BY A BROKER FROM THE SELLING MOTOR VEHICLE DEALER. IF APPLICABLE, THE NAME OF THE BROKER IS: _____

ASSIGNMENT
SELLER: CHAPMAN CHEVROLET DATED 08/22/15
ASSIGNEE: GM FINANCIAL OF ARIZONA
Branch: _____

Form No. 12 ©2005 a-d-s, INC. (Rev. 6/10)   ORIGINAL   ALL RIGHTS RESERVED

## ADDITIONAL TERMS, AGREEMENTS AND CONDITIONS

1. **BUYERS GUIDE FOR USED VEHICLES:** THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

LA INFORMACION QUE APARECE EN LA VENTANILLA DE ESTE VEHICULO FORMA PARTE DE ESTE CONTRATO. LA INFORMACION CONTENIDA EN EL FORMULARIO DE LA VENTANILLA ANULA CUALQUIER PREVISION QUE ESTABLEZCA LO CONTRARIO Y QUE APAREZCA EN EL CONTRATO DE VENTA.

2. (a) If the Vehicle is purchased primarily for personal use: NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

(b) If the Vehicle is purchased for commercial use, you will not assert any claim or defense against an Assignee of this Contract except of a type which may be asserted against a holder in due course of a negotiable instrument.

3. **ADDITIONAL COVENANTS OF BUYER:** You will (a) store the Vehicle at your address on the face hereof; (b) permit us to examine the Vehicle at any time; (c) maintain the Vehicle in good condition and repair; (d) not permit the Vehicle to be permanently removed from the State of Arizona without our prior written consent; (e) not permit the Vehicle to be attached or other process to be levied thereon; (f) not create or permit to be created any lien or encumbrance or adverse claim of any character whatsoever, whether for storage, repairs, or otherwise, justified or unjustified; (g) not attempt to sell, rent, lease, assign, or otherwise transfer your right, title, or interest in the Vehicle or this Contract without our written permission; and (h) pay all taxes and assessments of every character levied or assessed against the Vehicle, this Contract and the indebtedness represented hereby. You authorize us, at our option and without any obligation to do so, to discharge any and all taxes, liens, security interests or other encumbrances at any time levied or placed on the Vehicle. You hereby agree to reimburse us on demand for any expense incurred by us pursuant to this authorization, plus interest on all sums so expended until paid at a rate equal to the Annual Percentage Rate.

Time is of the essence of this Contract. Our acceptance of partial payments shall not in any manner modify the terms of this Contract and such acceptance shall not be construed as a waiver of any subsequent defaults on your part nor shall it waive the "time is of the essence" provision. Any payment amount we receive in addition to or in excess of a regular scheduled payment may be applied first to accrued late charges and collection charges (if any) and then to finance charges due and to the unpaid balance outstanding. You may not assign this Contract except with our prior written consent. You agree that you will not use or permit the Vehicle to be used for any unlawful purpose, nor to be used for hire, nor will you allow any person to operate or use the Vehicle who is not allowed under the terms of the insurance policies herein required to so operate or use the Vehicle.

Any notice required to be given to you shall be deemed reasonable notification if mailed by ordinary mail, postage prepaid, to your mailing address given herein or to your most recent address as shown by a "Notice of Change of Address" on file with us whether or not actually received by you, or if given in any other manner which results in your actual receipt of such notice.

4. **INSURANCE:** You agree: (a) to keep the Vehicle insured at your own expense against loss by fire, theft, collision and such other risks as we shall designate; (b) such insurance shall cover our interest in the Vehicle and shall be in force so long as any part of the balance owed under this Contract remains unpaid, and (c) such insurance is to be placed with insurance companies reasonably acceptable to us and loss thereon is to be paid to you and us as each party's interest may appear. You hereby assign to us the proceeds of all such insurance to the extent of the unpaid balances hereunder and direct any insurer to make payments directly to us. You hereby request and authorize us, at our option and without obligation to do so, to place and pay for insurance on the Vehicle upon your failure, after having been requested to do so; to provide insurance satisfactory to us and to pay the premium either for such insurance or similar insurance protecting us only, adding same to the unpaid balance then owing or by an advance which constitutes additional indebtedness and is secured hereunder and is added to the remaining installments or is payable in additional installments, due on this Contract. The policies therefor shall be held by us until this Contract is fully performed. You agree to reimburse us on demand for any payment made or any expenses incurred by us pursuant to the foregoing authorization, together with interest thereon from disbursement until paid at a rate equal to the Annual Percentage Rate. In the event of a loss, you agree that we may collect the proceeds from such insurance and apply the proceeds towards replacement of the Vehicle or payment of your obligation under this Contract. If we retake possession of the Vehicle, the insurance policies thereon, financed under this Contract, shall become our sole property and you shall have no further interest therein. In the event of any default hereunder, we are authorized to cancel any insurance and credit any premium refund against said unpaid balances.

5. **ADDITIONAL CHARGES FOR DELINQUENT PAYMENTS:** If you fail to make timely payments under this Contract, and if such delinquency requires collection efforts by us, you agree to pay reasonable collection charges and costs incurred by us, which charges may include specific charges for collection calls and collection letters.

6. **PREPAYMENT:** You may prepay the principal balance in full or in part at any time without penalty, provided all finance charges and other charges accrued to the date of prepayment are paid.

7. **COMPUTATION OF FINANCE CHARGES:** Finance charges accrue on a daily basis: A day shall be counted as 1/360th of a year, unless the Assignee of this Contract uses a method of computation which counts a day as 1/365th or 1/366th of a year, in which event the method of computation used by the Assignee for retail installment transactions such as yours on the date of assignment of this Contract to such Assignee shall apply.

8. **EVENTS OF DEFAULT:** (a) Any one of the following shall constitute an Event of Default: (1) Your failure to pay when due any indebtedness secured hereby; (2) If any warranty, representation or statement made herein or furnished to us by you or on your behalf in connection with this Contract proves to have been false in any material respect when made or furnished; (3) The commencement of any bankruptcy, arrangement, reorganization, insolvency, receivership or similar proceedings by or against you or any guarantor or surety for you; (4) The occurrence of any adverse change in your financial condition deemed material by us, or if, in our judgment the Vehicle becomes unsatisfactory in character or value, or if we reasonably deem ourselves insecure; (5) If you default in performing any of your obligations, promises, covenants or agreements contained herein or in any other agreement, paper or document given by you to us. (b) Any one of the following shall constitute an Event of Default if, in our opinion, such occurrence by itself, or such occurrence together with surrounding circumstances, materially increases our risks with regard to repayment of the indebtedness due: (1) Your death or incompetence; (2) If the Vehicle is levied upon or seized upon under any levy, attachment, garnishment, writ or other legal process, or if any lien is attached thereto; (3) If the Vehicle is lost, stolen, or suffers substantial damage destruction; (4) If the Vehicle is sold, rented, assigned or otherwise transferred without our written permission.

9. **DEBTOR'S LIABILITY FOR FAILURE TO RETURN VEHICLE:** It is unlawful to fail to return a motor vehicle subject to a security interest within 30 days after receiving notice of default. In the event of default, a notice of default will be mailed to you at the address on this Contract. However, nothing in this paragraph imposes any contractual obligation upon us to give you notice of default. Our failure to do so will not be a breach of this Contract and will not limit or impair any of our rights or remedies in the event of your default, as provided below. It is your responsibility to keep the listed address current. Unlawful failure to return a motor vehicle subject to a security interest is a class 6 felony. Assuming you have no history of prior felony convictions, such crime is punishable by a term of imprisonment of up to 1 year, plus a fine of up to $150,000., and all applicable charges.

10. **RIGHTS AND REMEDIES:** Upon the happening of any of the foregoing Events of Default and at any time thereafter, we may, at our option, and without notice to you, declare all of your indebtedness to us to be immediately due and payable, and we shall have the rights, duties and remedies of a secured party, and you shall have the rights and duties of a debtor, under the Uniform Commercial Code as adopted in the State of Arizona, and without limitation thereto, we shall have the following specific rights: (a) To take immediate possession of the Vehicle without notice or resort to legal process and for such purpose to enter upon any premises on which the Vehicle or any part thereof may be situated and to remove the same therefrom or, at our option, to render the Vehicle unusable; (b) To make or have made any repairs deemed necessary or desirable, the cost of which shall be charged to you; (c) If we take possession of the Vehicle, you will have the right to redeem the Vehicle by paying the net amount you owe on this Contract. If you do not redeem the Vehicle, we will, after giving notice to you and any other party entitled thereto, dispose of the Vehicle in a commercially reasonable manner, which may include either a public sale or a private sale. It is agreed that 10 days' notice of any such sale shall be reasonable. The proceeds of the sale, less allowed expenses, will be used to pay the amount still owed on this Contract. Allowed expenses are those reasonable expenses incurred as a direct result of retaking the Vehicle, holding it, preparing it for sale and selling it. In addition, if we hire an attorney who is not our salaried employee to collect what you owe, you agree to pay reasonable attorney's fees and court costs. If the proceeds of the sale, less allowed expenses, are not sufficient to pay the net amount still owed on this Contract, then, to the extent permitted by law, we may recover the deficiency with interest at the Annual Percentage Rate from you or anyone who has succeeded to your obligation. If there is money left over (surplus), it will be paid to you or whoever else is legally entitled to it. If, during repossession of the Vehicle, we come into possession of any property which is not security for this Contract, we will hold it for you. If you do not claim the property within 30 days after we have repossessed the Vehicle, we may dispose of the property in any manner we may select. You agree that we will have no further liability to you for this property.

11. **GENERAL:** This Contract shall be governed by the laws of the State of Arizona. Any provisions found to be invalid shall not invalidate the remainder hereof. Waiver of any default shall not constitute waiver of any subsequent default. All words used herein shall be construed to be of such gender and number as the circumstances require and all references herein to you shall include all other persons primarily or secondarily liable hereunder. This Contract shall be binding upon the heirs, personal representatives, successors and assigns and shall inure to the benefit of our successors and assigns. This Contract, together with any other written agreements contemporaneously executed by you and us, constitutes the entire agreement between you and us and may not be altered or amended unless made in writing and duly executed by you and us.

12. **SELLER'S RIGHTS IN ABSENCE OF CREDIT APPROVAL:** (a) You agree to furnish us any documentation necessary to verify information contained in the credit application. (b) You acknowledge that it may take a few days for us to verify your credit and assign this Contract. In consideration of our agreeing to deliver the Vehicle, you agree that if we are unable to assign this Contract to any one of the financial institutions with whom we regularly do business pursuant to terms of assignment acceptable to us, we may cancel this Contract. (c) In the event we cancel this Contract, we shall give you notice of the cancellation. Upon receipt of such notice, you shall immediately return the Vehicle to us in the same condition as when sold, reasonable wear and tear excepted, and this Contract shall then be deemed cancelled. We agree, upon cancellation of this Contract, to restore to you all consideration we received in connection with this Contract, including any trade-in vehicle. (d) In the event the Vehicle is not immediately returned to us upon notice of our cancellation of this Contract, you agree to pay and shall be liable to us for all expenses incurred by us in obtaining possession of the Vehicle, including attorney's fees, and we shall have the right to repossess the Vehicle with free right of entry wherever the Vehicle may be found. (e) While the Vehicle is in your possession, all terms of this Contract, including those relating to use of the Vehicle and insurance for the Vehicle, shall be in full force and effect and all risk of loss or damage to the Vehicle shall be assumed by you, you shall pay all reasonable repair costs related to any damage sustained by the Vehicle while in your possession or control of and until the Vehicle is returned to us.

### SELLER'S ASSIGNMENT AND WARRANTY

For value received, Seller hereby sells, assigns and transfers to Assignee, all rights, title and interest in and to this Contract, the Vehicle and equipment therein described and all monies due and to become due hereunder. SUCH ASSIGNMENT SHALL BE PURSUANT TO THE REPRESENTATIONS, WARRANTIES AND OTHER PROVISIONS OF THE EXISTING DEALER AGREEMENT WITH ASSIGNEE. In the event there is no executed dealer agreement with Assignee, Seller warrants, to the best of its knowledge, that (i) the signature of the Buyer(s) herein are genuine, (ii) Seller holds title to the Vehicle, (iii) the cash down payment shown has been tendered to Seller, (iv) the Vehicle is free from any liens and/or encumbrances except the lien relating to the security interest created by this Contract, (v) the Vehicle has been delivered into the possession of the Buyer(s), (vi) Buyer(s) was of legal age to execute this Contract on the date hereof, (vii) the Vehicle has not been designated as salvaged, (viii) if this transaction is subject to regulation by any state or federal law or regulation, the transaction was consummated in compliance with such law(s) and any regulations promulgated pursuant thereto, (ix) that before offering to sell this Contract to Assignee, any period, where Buyer(s) had the right to rescind such transaction, had expired and such Buyer(s) had not rescinded the transaction, (x) that this Contract and the debt evidenced thereby is not, and will not be, subject to any claims, disputes, complaints, offsets, counterclaims or defenses of any kind during the time the said debt remains unpaid and (xi) Seller will take all action necessary to perfect the first lien purchase and security interest in Seller or its Assignee.

Seller hereby agrees to repurchase this Contract upon the occurrence of any such breach of warranty or false representation immediately, upon demand by Assignee, for a cash amount equal to the net unpaid balance of the Contract and, upon receipt of such funds, Assignee shall assign its security interest and any other rights to Seller. Seller further hereby agrees to indemnify and hold Assignee harmless from all loss, claims, damages, costs, expenses and attorney's fees incurred or sustained by Assignee resulting from or arising out of such obligations under this Contract determined to be due to any meritorious claim or defense Buyer(s) may now or in the future have against Seller relating to the transaction herein described. If the Assignee's and/or Seller's right and duties hereunder are referred to an attorney for interpretation or enforcement, the prevailing party shall be entitled to receive and collect from the losing party all court costs incurred plus reasonable attorney's fees.

Seller waives all demand and notices of default and consents that, without notice to the Seller, Assignee may extend the time of payments or compound or release by operation of law or otherwise any rights against Buyer(s) or any other obligor. Assignee shall not be bound to take any steps necessary to preserve any rights in this Contract or any accompanying agreements or documents against prior parties, which Seller hereby agrees to do.

IT IS EXPRESSLY UNDERSTOOD AND AGREED that any method of assignment herein provided shall not be deemed to relieve Seller of and from any liability for the breach of warranties, representations or agreements contained herein or in this Contract.

### GUARANTY

Each of the undersigned ("Guarantor"), jointly and severally, guarantees payment of all amounts owing under this Contract and the payment upon demand of the entire amount owing on this Contract in the event of default in payment by Buyer(s) named therein. Guarantor waives notice of performance, demand for performance, notice of nonperformance, protest, notice of protest, notice of dishonor, notice of acceptance of this Guaranty, of any extensions in time of payment, of sale of any of the collateral and of all other notices to which the undersigned would be otherwise entitled by law and agrees to pay all amounts owing hereunder upon demand, without requiring any action or proceeding against Buyer(s), and specifically waives any right to require action against Buyer(s) as provided in ARIZ. REV. STAT. § 12-1641, et seq. Guarantor agrees to deliver to Seller or, after assignment, to Assignee, timely financial statements and any other information relating to the Guarantor's financial condition as may be reasonably requested. GUARANTOR HEREBY ACKNOWLEDGES RECEIPT FROM SELLER, PRIOR TO SIGNING BELOW, OF A SEPARATE "NOTICE TO COSIGNER."

_____    _____
Date                                    Guarantor

_____    _____
Date                                    Guarantor

MARITAL COMMUNITY JOINDER. The undersigned spouse of Guarantor joins in the execution of this Guaranty for the purpose of binding the marital community of Guarantor and the undersigned, in accordance with ARIZ. REV. STAT. § 25-214 or other applicable law. UNDERSIGNED SPOUSE OF GUARANTOR ACKNOWLEDGES RECEIPT FROM SELLER, PRIOR TO SIGNING BELOW, OF A SEPARATE "NOTICE TO COSIGNER."

_____    _____
Date                                    Spouse of Guarantor

# ARIZONA CERTIFICATE OF TITLE

**ADOT**
Motor Vehicle Division
48-7200 R01/16  azdot.gov

Inventory Control

| Vehicle Identification Number | Year | Make | Model | Body Style |
|---|---|---|---|---|
| 2GNALDEK6D6132861 | 2013 | CHEV | EQUIN | 4DSW |

| First Registered | List Price | Mobile Home Manufacturer | Unit Number |
|---|---|---|---|
| 12/2012 | 025400 | | |

GM FINANCIAL OF ARIZONA
PO BOX 1510
COCKEYSVILLE MD 21030-0000

Issue Date: 09212015
State: AZ
Issue Date: 06172015

Odometer Reading (no tenths) *: 0035572 A
A - Actual Mileage
B - Mileage in excess of the odometer mechanical limits
C - NOT Actual Mileage, WARNING ODOMETER DISCREPANCY

**Arizona Brands**

| Previous Brand | State | Previous Brand | State | Previous Brand | State | Other States With Brands |
|---|---|---|---|---|---|---|

Owners/Lessees
JOHN AUGUST ZARRO
1824 E ALOE PL                          CHANDLER                  AZ  852862209

Lienholder(s) as of print date.  (Additional liens may exist. Check Motor Vehicle Inquiry on https://servicearizona.com to find all current liens.)

FIRST LIEN-                              LIEN DATE:    08222015
GM FINANCIAL OF ARIZONA
PO BOX 1510                              COCKEYSVILLE              MD 21030

**LIEN RELEASE**

| Lienholder Name | | | Acknowledged before me this date. | Notary Public Signature | | |
|---|---|---|---|---|---|---|
| Lien Amount | Lienholder Signature | | Date | County | State | Commission Expires |

VOID WITHOUT EAGLE WATERMARK OR IF ALTERED OR ERASED

# EXHIBIT "B"

# EXHIBIT "B"

## Vehicle Information

| | |
|---|---|
| Vehicle: | 2013 Chevrolet Equinox Utility 4D LT 2.4L I4 |
| Region: | Desert Southwest |
| Period: | June 25, 2024 |
| VIN: | 2GNALDEK6D6132861 |
| Mileage: | 224,000 |
| Base MSRP: | $25,400 |
| Typically Equipped MSRP: | $26,730 |

## J.D. POWER Used Cars/Trucks Values

| Monthly Trade-In | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Rough | $3,350 | -$1,990 | $125 | **$1,485** |
| Average | $4,250 | -$1,990 | $125 | **$2,385** |
| Clean | $4,975 | -$1,990 | $125 | **$3,110** |
| | | | | |
| Clean Loan | $4,500 | -$1,990 | $125 | **$2,635** |
| Clean Retail | $7,525 | -$1,990 | $125 | **$5,660** |

## Selected Options

| | Trade-In/Loan | Retail |
|---|---|---|
| Power Driver's Seat [VIN Precision+] | $75 | $75 |
| Remote Engine Starter [VIN Precision+] | $50 | $50 |

J.D. Power Used CarGuide assumes no responsibility or liability for any errors or omissions or any revisions or additions made by anyone on this report. ©2021 J.D.Power

Page 1 of 1